Case number 14-7133 at L. Angela Price, parent and next friend of J.P., a minor appellant, Jerome Parker, LaShawn Weems, parent and next friend of D.W., a minor appellant, v. District of Columbia. Ms. Rosenbaum for the appellants, Mr. Love for the appellate. May it please the Court, Adina Rosenbaum on behalf of Angela Price, LaShawn Weems, and Jerome Parker. Over 30 years ago, in Bloom v. Stenson, the Supreme Court made clear that the amount an attorney agrees to accept to represent a client does not govern the rate for attorney's fees if the client prevails. That principle requires reversal of the District Court decision here, which held that the parents, in this case, who were prevailing parties under the IDEA, were not entitled to fees based on a rate above $90 per hour. The IDEA requires that attorney's fees, under its fee-shifting provision, be based on prevailing market rates in the community. Despite that requirement, the District Court here did not base the attorney fee award on prevailing market rates. Instead, because the parent's attorney had been appointed under the D.C. Criminal Justice Act, which provides for compensation at $90 per hour, the District Court held that the parents could not recover fees at a rate above that amount. But it's well established that the rate an attorney agrees to accept does not govern the rate for fee-shifting purposes. Well, that's true if it's a contingent fee arrangement. We know that. But this looks different from other things that we have seen. I guess the question is, is your argument that the Court really never has the option of not providing attorney's fees under the IDEA case? The Court cannot base its decision of attorney's fees and what rate to provide those at just on the amount that the attorney agreed to accept in undertaking the representation. So in Bloom, the Supreme Court held that the fact that a client has pro bono representation, that the attorney is charging nothing, doesn't mean that the client should have a fee award of nothing or a zero-hour reduced rate just because he was charged nothing for the representation. Does that mean that the Court couldn't even consider the rate in deciding what's reasonable? I don't think it can, because the IDEA specifically requires that fees under the statute be based on prevailing market rates in the community. So the IDEA specifies what the attorney's fees have to be based on, and the amount that's actually charged in the specific case or that the attorney agrees to accept in the specific case is irrelevant to that determination of what the prevailing market rate is. And this Court has held that that's also true when an attorney charges a reduced rate for public interest purposes. It held that in Save Our Cumberland Mountains. That reduced rate is not the prevailing market rate for fee-shifting purposes, and the client is not bound to that reduced rate just because that's what the attorney charged under those circumstances. And that same principle governs here, the $90 in the CJA is just the amount that the attorney agreed to accept to represent the plaintiff under these circumstances. And it doesn't govern the rate for fee-shifting purposes any more than the $0 hourly rate did in Bloom or the reduced rate did in Save Our Cumberland Mountains. And the appointment orders in Jerome Parker's and Angela Price's case underscore that the CJA rate and the CJA compensation scheme are separate from the IDEA fee-shifting scheme. That appointment order states that the D.C. Superior Courts will reimburse the client, will pay the attorney under the CJA if he is not otherwise paid by DCPS. So it underscores that the CJA compensation scheme is something separate from the IDEA fee-shifting provision. And it's not what governs the IDEA fee-shifting provision. What governs fee-shifting under the IDEA and the fee award that's awarded under it is the provision under the IDEA that states that attorney's fees will be based on prevailing market rates in the community. And $90 is not the market rate for the work that was done here. To begin with, that's not what the district court held here. He did not talk about market rates at all. And again, the fact that Mr. Bergeron agreed to represent the clients at that rate doesn't make it the market rate, nor does the fact that there's a panel of attorneys willing to represent indigent clients at that rate. The IDEA talks about market rates for the kind and quality of work done, making clear that the market is other attorneys who are doing work of this kind and quality. It's based on what the market is for this type of work for a few paying clients, not based on the pool of other attorneys who are representing indigent clients at a reduced hourly rate. And all of the parties in this case, particularly below, cited a range of cases that talked about IDEA fees and that awarded fees in IDEA fee-shifting cases. And those fees tended to be the Laffey rate or some significant portion of the Laffey rate. And this court has recognized that the Laffey rate provides evidence of prevailing market rates in the District of Columbia, except for the District Court below, which found itself bound by, or thought it was bound by, the $90 rate. None of the cases that have, in which the District of Columbia has argued that that $90 rate applies, have found it to be the prevailing market rate. Congress enacted the fee-shifting provision in the IDEA because it thought that that's what was necessary to ensure that students in need of special education services received competent attorneys to help them get the services that they need. And when a parent prevails on behalf of her child in an IDEA proceeding, that demonstrates that up until that point, the educational system has failed that child. And in CJA cases, that's particularly apparent, apparent enough that the Superior Court appoints an attorney for the student to make sure that that student can get the educational services that they need. And it's only with the help of that attorney that the student is able to get those services. And that's what happened here. Once the attorney was appointed and could guide the parents and represent the parents in the due process hearings, the students in these cases were able to obtain very much needed educational services. Just so the record is clear, it is the fact that there was a separate lawyer that was appointed to basically handle kind of the criminal side, so to speak, of the juvenile proceedings. Is that right? Yes. Mr. Bergeron was appointed just to handle the special education part. And he did the due process hearings in these cases. And Congress specifies that when an attorney helps parents prevail in due process hearings on behalf of their children, that the rate at which the parents should be compensated under a fee-shifting statute is the prevailing market rate. Can I ask you just a practical question? If it's the parents who are compensated, how do the attorneys end up with the money? The parents will eventually give the money to the attorneys. But technically, it's the parents who are the plaintiffs here and who receive the fee awards. And it's the parents who receive the fee award. And so is there something in the agreement with the attorney that assigns these rights to them? I believe that's often the way it happens. I don't know the specifics of the retainer agreement here. But generally, in fee-shifting cases, the parents are the ones who are the plaintiffs in the fee-shifting case and who own the fee award. But the fee award ends up going ultimately to the attorney because the attorney is the one who did the work. I know that you're correct about most of the precedent in this area. But what you've described Congress's purpose as being enabling them to have representation, right? And so if the CJA process enables them to have representation, what is really the justification for the market rate? Well, the CJA process provides an additional incentive to have justification for some of the students who may find it the hardest to get representation otherwise. These are students in delinquency proceedings. And so it does provide additional incentive above the fee-shifting regime already in place because of the IDEA. But it's at a far below market rate. And so that on its own does not provide the same incentive as the IDEA. And this is no different from Save Our Cumberland Mountains. There, the reduced rate may have supplied the incentive for the attorneys to work. I understand what you're saying. I'm just trying to figure out how do we – I mean, in other words, the IDEA process is an administrative process, which seems pretty straightforward. I mean, you know, if you can show that your child is diagnosed with disabilities and that there's a recommendation for a specific kind of program for them and that that wasn't provided, you know, that's basically all you have to show. On the other hand, criminal representation can be quite complex, certainly very significant. And $90 is enough for that, but not for representing somebody in this administrative here. So I'm just trying to figure out, you know, how we decide what's reasonable. I have a few responses to that. One is that these proceedings can actually be quite complex. The proceeding in Angela Price and Jerome Parker's case, for example, was a multiple-day hearing with nine witnesses, including multiple experts. So it's not simple proceedings. It actually looks a lot like litigation. And to the extent that it is fairly simple, that will be reflected in the number of hours spent on the case. So the complexity is already taken into account in that sense. But the IDEA doesn't just say reasonable. It defines what it means by reasonable under the circumstances. And what the law states is that a fee award has to be based on prevailing market rates. So it's not reasonable in a vacuum where the district court has the discretion to come up with any rate that it thinks is reasonable. The IDEA has specified what the rate has to be, and the rate that it requires is the prevailing market rate in the community. And that's not what was awarded here. One of the theories, though, is that there's a tradeoff that you get the $90 either way, win or lose. And so that's a plus for attorneys. It is, but in Save Our Cumberland Mountains, the attorneys who charged the reduced rate were going to get that reduced rate plus whether or not they won or lose, lost. And yet the clients were still entitled to fee shifting at the prevailing market rate once they won. So this is the exact same situation. Yes, the attorney receives the $90 whether or not they win or lose, but that doesn't foreclose or dictate what the hourly rate should be for fee shifting purposes once the client prevails. No matter what the attorney is receiving from their client, whether or on behalf of their client, whether or not that's a rate that is the market rate or not, once they prevail under the terms of the statute and under the governing case law, the client is entitled to a fee award based on prevailing market rates. Does the attorney get both that CJA rate plus the attorney's fees? No, not for the same work. For the work that's compensated by DCPS, the attorney just gets the IDEA fees. There is some work that cannot be compensated under the IDEA, and they would receive the superior court CJA fees for that other work. So that suggests if they got the $90, it would be compensating them for that, so it's discounted. I was curious because the district court here came up with the number $505 an hour. I wasn't sure how that was calculated. That's the LAFI rate for the work that was done here. So that's based on the spreadsheet, so to speak, and the lawyer's years of experience? Exactly. It's based on the matrix that is put out by the U.S. Attorney's Office. And when you look at the lawyer's experience and the year on that spreadsheet, the LAFI rate for Mr. Bergeron was $505. Unless there are any further questions, thank you. Thank you. Good morning. May it please the Court. Richard Love for the District of Columbia. If I can start with several factors which distinguish this case. The first, of course, is that counsel agreed to represent the plaintiffs at IDEA administrative hearings at no cost, pursuant to another statute that fixes the rate of compensation at $90 an hour. And the second, in fact, it would be a misapplication of IDEA's fee-shifting provisions to award plaintiffs' fees based on Mr. Bergeron's years of experience and the hours he expended at IDEA administrative hearings, when under the CJA, Mr. Bergeron is prohibited from asking the plaintiffs for any compensation, and indeed he's prohibited from accepting any compensation beyond that provided for in the statute. But he hasn't been compensated under the statute, under the CJA. Well, he was. If you pay him, you're not paying him out of the CJA funds. The district isn't. Well, the district was paying him pursuant to the statute because the statute, regardless of the source of the funds, it is still paying him pursuant to the statute which fixes the rate of compensation at $90 an hour. You don't pay lawyers for doing CJA work. No. You don't pay any other juvenile lawyers who submit vouchers. The court pays them. Well, that's correct. But I think that's simply the source of the funds wouldn't distinguish necessarily the work that was being done. What I think is more critical than the source of the budget, where the funds come from, is what was the work that was done. And the work that was done here was exactly what he was appointed under the CJA to do, and that is represent the parents in IDEA administrative hearings. It seems to me that you are completely misconstruing how the statute works with that argument. I mean, what the Superior Court did here was issue an order. There was an administrative order based on the fact that juveniles and kids in the abuse and neglect system need oftentimes for either their rehabilitation, which is part of the delinquency, or just to get the proper services as an abused or neglected child, they need to have their educational circumstance addressed. And the lawyers who do the run-of-the-mill juvenile delinquency work are criminal lawyers, so to speak, and they don't know anything about education, special education. And so there's a special panel that's created, and they're appointed to represent the kid in conjunction, and the parent in conjunction with the delinquency proceeding. And if they can't get any money out of the IDEA, then the court pays them out of CJA funds because the court can't just conscript lawyers in and make them do work that they're not going to be paid for. I mean, isn't that what's happened here? I think that that's correct, but I still think that they're doing the exact work that the appointment under the CJA authorized them to do, and that having agreed to do that work at $90 an hour, it wasn't unreasonable for the court to find that that constituted the reasonable rate under the circumstances of this case. And, you know, the court's appointment brings with it, you know, additional advantages, as we pointed out in our brief. It prescreens the clients. It also authorizes them access to records that they otherwise would have to move the court for. And so the attorney, and I think it's fair to say the client, the plaintiffs as well, accepted this appointment under those terms and are seeking here almost six times the amount that the statute fixes the rate of compensation. But in the ordinary case, IDEA case, that is what is awarded, right? That can be what is awarded. A lot of the cases are LAFI, right? Or some variation thereof. Some variation of LAFI, enhanced LAFI, I know all that. But it seems like the statute here doesn't worry about what the initial contract may have been. The statute just speaks to fees. It has to be rates prevailing in which the action or proceeding arose for the kind and quality of services furnished. No, I agree. So if you start with the statute, it doesn't really matter what kind of contractual arrangement or preexisting arrangement might have been going on in a particular case. Well, I think the court could certainly have taken into consideration and viewed the market very narrowly as that pool of attorneys who are appointed by the superior court to provide these specific services under the CJA and to have found that that was the prevailing market. What percentage of cases, these kinds of cases, are done by the CJA process? It would just be a guess. My guess would be a smaller percentage, but I really don't know. So it's unlikely then that that really is the prevailing rate for the kind and quality of services furnished if you look at IDEA cases more generally. Yes, more generally. It's a subset of that market. There are 35, at least on the administrative order, 35, I believe, attorneys that are listed on the special education advocate panel. But I think there's also case law that does, I mean, even in Blum, it says there may be circumstances where if you derive a fee using the Lodestar method that the district court finds unreasonably low or unreasonably high, the district court can adjust it. And I think that's repeated in the Blanchard case. It says it's central to awarding of attorney's fees that the district court, judging his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. So if there are two juveniles arrested for joyriding in a stolen car, common charge in D.C. Superior Court, juvenile court, one of the kids, his parents, had a special education attorney before the arrest. The other one didn't. So the second child, the court appoints an attorney along with the main delinquency attorney. The special education attorney is appointed. They both basically do the same thing for the kids, and they both prevail before a hearing officer, and they both submit invoices to the district requesting payment. You're saying that one should be paid market rate based on the broader market, and the other one should be paid $90 an hour? Well, I'm saying the district judge has the discretion to view the circumstances of the case and make that judgment. And parents are not required to accept counsel under the CJA in that circumstance that a parent who would be free to retain for the special education services the attorney that the other child had already engaged for that purpose. But one point before I conclude, if I could, even if the court finds that the district court here erred, there were a number of issues that were raised in the motions that were not addressed by the district court. And that includes, first, whether the plaintiffs have provided sufficient evidentiary support for the rate they claim under Laffey. And then second, even if they did, whether that rate was reasonable, whether the $90 an hour rate was the prevailing rate, whether the $250 an hour that Mr. Bergeron invoiced the public schools was the reasonable rate, whether Laffey's the reasonable prevailing rate or some percentage of it. All those are still issues, including whether all of the hours were reasonable. Some were specifically challenged. Did you argue below that something other than $90 was the appropriate rate? Yes. It's in the district's motion. I believe it's ECF 12-1, and I think it's at pages 3 and 7. Well, and other pages as well. But, yes, it was specifically argued that even— Did you argue in your brief before us that something in between $90 and Laffey would have been reasonable? Well, we dropped a footnote to say that the district court never addressed those issues and that having not passed on it, even if the district court erred, though it should be remanded for the district court to address in the first instance all of those issues, including whether or not— I mean, $505 is the current rate or the then-current rate. It wasn't the historical rate at the time the work was done. That's another issue. But there were several issues that were raised in the district's motion that weren't addressed and, at minimum, should be addressed even if this court finds that it had erred. There's nothing further, I think. Ms. Rosenbaum, you had no time remaining. We'll give you a minute if you need it. Thank you. The district's argument that arguments about the narrow market and about having accepted appointment don't account for the long range of cases beginning with Bloom and including Save Our Cumberland Mountains, that made clear that the amount accepted does not govern the fee rate. The fact that he accepted appointment under the terms of the CJA does not mean that that's the rate when the clients seek fees under a fee-shifting provision, as made clear by that line of cases. And this court has also rejected the argument that there's a narrow market just of the people who seek reduced fees. If that were the case, then in Bloom it could have been argued that the market was just the group of people who provided pro bono representation, so the market rate was zero. But the Supreme Court rejected that argument and said instead that clients were entitled to fees at prevailing market rates. That's also what the IDEA specifically provides in its text, and that's what should have been awarded here. Thank you. Thank you. The case will be submitted.
judges: Brown, Kavanaugh, Wilkins